UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,    )
                             )  NO.  CR-02-127-JLQ
        Plaintiff,           )
                             )  MEMORANDUM OPINION AND
  vs.                        )  ORDER DENYING DEFENDANT'S
                             )  MOTION TO VACATE CONVICTION
GABRIELE KOENIG a/k/a LOPEZ, )  AND DISMISS INDICTMENT WITH
                             )  PREJUDICE
        Defendant.           )
_____)

   Before the court is Defendant Gabriele Koenig's Motion to Vacate her conviction and Dismiss the Indictment With Prejudice (C.R. 136), heard telephonically on March 7, 2007.   Beth Mary Bollinger appeared on behalf of Defendant Gabriele Koenig.  Assistant United States Attorney Stephanie Whitaker appeared on behalf of the Plaintiff. The court had previously heard argument on the Government's preliminary contention that the Defendant's Motion was a second or successive 28 U.S.C. § 2255 petition that should be dismissed since the Defendant had not applied to and received permission from the Ninth Circuit Court of Appeals to file her Motion.  This court rejected that contention by Memorandum Opinion on February 21, 2007. (C.R. 156).

   Having reviewed the record, heard argument of counsel, and being fully advised in this matter, **It Is Hereby Ordered** that  Defendant's Motion to Vacate Judgment and Dismiss Indictment is **Denied** for the following reasons.

## I.  BACKGROUND

   The Defendant was indicted on May 7, 2002, on several charges of possession of cocaine base with intent to distribute.  On the present Motion To Dismiss, the Defendant relies upon  "outrageous behavior" of the Government based upon its failure to furnish alleged impeachment information concerning Government witness David Palmer as required by *Brady v. Maryland*, 373 U.S. 83 (1963).

   The withholding of this *Brady* information concerning Palmer only came to light in the year 2006.  As found by Judge Edward Shea of this court in his Memorandum Opinion

of January 16, 2007, in *United States v. Heit*, E. D. Wash. No. CR-05-6028-EFS (C.R. 255), on June 6, 2002, some two months prior to the trial of Ms. Koenig, Lt. Chan Bailey of the Spokane Police Department Drug Task Force called federal Drug Enforcement Agent Shelby Smith and informed Agent Smith that the City and County of Spokane would no longer be utilizing David Palmer as a "confidential source" in drug buys because he had been deemed to be "unreliable." Judge Shea found Lt. Bailey's testimony to be credible.

Apparently, Agent Smith did not communicate this "unreliable" information from Lt. Bailey to Assistant United States Attorney Earl Hicks, then in charge of the prosecution of this and its related cases. On June 19, 2002, Mr. Hicks forwarded a letter (C.R. 148-2) to counsel for all Defendants in these cases setting forth various *Brady* information concerning witness Palmer and also witness Janie Arambula. The information concerning Mr. Palmer's alleged "unreliability" was not set forth in Mr. Hicks' June 19, 2002 letter. Mr. Hicks was not involved in the actual trial of the case.

The combined jury trials of Gabrielle Koenig, Elvis Singh, and James Evans commenced on August 12, 2002. Assistant United States Attorneys Aine Ahmed and Stephanie Whitaker represented the Government. Two informants, David Palmer and Janie Arambula, testified on behalf of the Government along with other witnesses. Mr. Palmer's testimony was limited to his statements that Mr. Evans had given directions to Palmer and one Joseph Davis to drive to the residence at E. 918 Empire in Spokane, Washington for the purpose of purchasing crack cocaine with the $1,000 Palmer would then give them. Palmer testified that he gave Evans and Davis the $1,000 who then entered the residence while Palmer remained in the car and they returned with the crack cocaine. Palmer testified that upon the return to his car he asked Evans and Davis if the agreed amount of cocaine was there and Evans responded that the amount was correct "because he weighed it right in my face." All of Palmer's conversations with Evans and Davis were recorded and played to the jury. Palmer testified that he did not see Defendant Koenig on that date and had never met her at any time.

The court permitted extensive cross-examination of the witness Palmer including issues such as any past or present drug use, payment for work as an informant, sources of income, and the failure to file income tax returns. The court did preclude examination as to Palmer's alleged sexual assault and/or kidnapping conviction in 1973 as being stale and not probative of Palmer's present credibility. During a recess in that cross-examination, attorney Frank Cikutovich, representing James Evans, informed the court that he had concerns as to whether the Government had fully disclosed all *Brady* material concerning Palmer to counsel for the Defendants and requested that the court review Palmer's D.E.A. file for *Brady* material. The court rejected that request with the statement that it was the responsibility of the United States Attorney's office, and not that of the court, to review such materials and disclose any *Brady* information concerning a witness.

Apparently, based upon the request of Mr. Cikutovich, Agent Smith brought Palmer's D.E.A. file to the office of the United States Attorney where it was reviewed for *Brady* information by Assistant United States Attorney Tom Rice.  While Lt. Bailey had prepared a Memorandum as to the allegations that Palmer was "unreliable," he had not sent a copy of that Memorandum to Agent Smith and such a Memorandum was not contained in Palmer's file at the time it was inspected by Mr. Rice. Mr. Rice found no undisclosed *Brady* type information in Palmer's D.E.A. file and he so advised the Government trial attorneys.  There is no contention that any such information was in the file.  There also is no evidence Agent Smith informed Mr. Rice of the "unreliable" conversation with Lt. Bailey.  However, there is also a lack of evidence as to whether the Government attorneys involved in these cases made inquiry of the Government agents as to any *Brady* information within the agents' personal knowledge concerning the credibility of the Government witnesses, as opposed to just an inspection of what was in Palmer's file.  The cross-examination of witness Palmer was concluded without counsel for the Defendants being informed that Palmer was no longer being used by the City and County of Spokane because of his alleged "unreliability."

At the trial of Ms. Koenig, Mr. Evans, and Mr. Singh, the court allowed extensive

cross-examination of Mr. Palmer as stated, *supra*, and in Jury Instruction No. 23 informed the jury that the testimony of an informant should be examined with greater care than the testimony of a witness not motivated by the payment of money for his or her work. As stated, *supra*, the testimony of Mr. Palmer did not directly inculpate Ms. Koenig in any drug transaction. All of the Defendants were convicted of the cocaine base charges and Defendants Koenig and Evans were both sentenced to mandatory minimum terms of five years. In addition, Ms. Koenig faces deportation, despite her long-term and legal residence in the United States, since she has not completed her citizenship procedures.

Thereafter, the D.E.A. agents continued to use Palmer as an informant in the purchase of illegal drugs, including the *Heit* investigation. By the time of the prosecution of the *Heit* case in 2006 in this district before Judge Shea, the D.E.A. in the Spokane area had become part of the Spokane Regional Task Force, including detectives from the City and County of Spokane police and sheriff's departments. The "unreliable" Memo was then placed in Palmer's file and during the prosecution of the *Heit* case, counsel for the Government, Ms. Whitaker, upon learning of the Memo, disclosed it to defense counsel therein who in turn disclosed its existence to counsel in the case *sub judice*.

In the *Heit* case, Judge Shea held extensive pre-trial evidentiary hearings on the Defendant's Motion To Dismiss based on the Government's use of Mr. Palmer. Judge Shea made extensive findings set forth in his January 16, 2007 post-trial Order (C.R. 255) and while being somewhat critical of the Government's conduct, denied the Motion To Dismiss for outrageous behavior. Judge Shea also precluded the use of the Lt. Bailey Memo in the cross-examination of David Palmer during the *Heit* trial. The Government contends that such a ruling would therefore have been made by this judge in the 2002 trial of this case, had the Bailey Memo and information been in the hands of defense counsel. Ms. Bollinger, on behalf of Ms. Koenig, points out that the scope of cross-examination is a matter within the discretion of the trial judge and that this court might have ruled contrary to Judge Shea and allowed the cross-examination of Mr. Palmer concerning his alleged "unreliability." The court makes no determination on this evidentiary issue, but

1  assumes in this Opinion that Ms. Bollinger's suggestion is correct, solely for the purposes
2  of this Opinion.

## **II.  DISCUSSION**

4       The Government's argument throughout its briefing and at oral argument on this
5  Motion that it did not have the troubling "unreliable" information about Mr. Palmer at the
6  time of Ms. Koenig's trial is  without merit.  Ms. Whitaker's briefs repeatedly state that
7  the information was not within the possession of the "Government," apparently referring
8  to the office of the United States Attorney. It is not disputed that United States Drug
9  Enforcement Agency Special Agent Shelby Smith had been informed of the fact of and
10 the basis for the "unreliable" tag placed on Government witness  Palmer well before the
11 trial of this matter. It appears that no member of the United States Attorney office asked
12 Agent Smith if he had any non-file *Brady* information about the informant Palmer and
13 Agent Smith did not voluntarily share any such information.  It is the opinion of this court
14 that in fulfilling its *Brady* obligations, counsel for the Government must inquire of the
15 Government agents as to any *Brady* information within the knowledge of the agents.

16      In *United States v. Henthorn,* 931 F.2d 29 (9th Cir. 1990), the court clearly held that
17 the prosecutor must obtain information known by other agents of the government and turn
18 over any *Brady* material from that information to the defense or present it to the court for
19 a ruling as to whether it is  *Brady* material .  *See also United States v. Blanco,* 392 F.3d
20 382 (9th Cir. 2004).

21           Because the prosecution is in a unique position to obtain information known
             to other agents of the government, it may not be excused from disclosing
22           what it does not know but could have learned. . . A prosecutor's duty under
             *Brady* necessarily requires the cooperation of other government agents who
23           might possess *Brady* material.  Exculpatory evidence cannot be kept out of
             the hands of the defense just because the prosecutor does not have it, where
24           an investigating agency does.  That would undermine *Brady* by allowing the
             investigating agency to prevent production by keeping a report out of the
25           prosecutor's hands until the agency decided the prosecutor ought to have it,
             and, by allowing the prosecutor to tell the investigators not to give him
26           certain materials unless he asked for them.

27 *Id.* at 394.

28      It is clear that the derogatory information forming the basis for Mr. Palmer

being classified as "unreliable" was known to an agent of the United States Government and was never revealed to defense counsel, who had specifically asked for any *Brady* information and was so ordered by this court.  Therefore, there is no basis whatsoever for the Government's argument that the information was not within the knowledge of the "Government."   This court firmly believes that the "unreliable" information concerning Palmer was clearly *Brady* information that the Government and its agents, be they attorneys or otherwise, were obligated to reveal.  This court also finds that there is an obligation on the part of the attorneys prosecuting a case, to inquire of the Government agents with knowledge of the case and/or with knowledge of the Government witnesses as to any knowledge of *Brady* type material concerning the case or witness(es).

If the information about Palmer had been revealed to defense counsel, undoubtedly they would have attempted to use it to cross-examine Palmer or to call as witnesses those who made the "unreliability" determination to challenge the reputation of Palmer for truth and veracity pursuant to F. R. Evid. 608(a).  However, assuming, without ruling, that the court would have permitted defense counsel to so proceed and that witnesses would have testified as to the poor reputation of Palmer for truth and veracity, Palmer gave absolutely no testimony against Ms. Koenig.   Mr. Palmer's testimony, supported by the tape recordings, was about a controlled buy involving only co-defendant James Evans and James Davis on April 9, 2002, after which any participation in the investigation of this case by Mr.  Palmer ceased.

In determining if a *Brady* violation warrants appropriate post-trial action by the court, the court must determine whether if the withheld information had been furnished as required, a "reasonable probability" exists that the result of the proceeding would have been different.  *Kyles v. Whitley*, 115 S. Ct. 1566 (1995); *United States v. Bagley*, 473 U.S. 667(1985). In the case against Ms. Koenig, the court is unable to so find.  Not only did Palmer's testimony not mention or inculpate Ms. Koenig, the court had allowed defense counsel substantial latitude in examining Palmer as to his background and any possible motives for testifying falsely, such as monetary payments from the Government.

In analyzing if a Defendant has been deprived of his Sixth Amendment rights through restriction on cross-examination by the court or by reason of the Government having withheld *Brady* material concerning the witness, when the withheld information "relates to impeachment evidence, the test . . . is whether the jury had in its possession sufficient information to appraise the biases and motivations of the witness." *United States v. Bleckner*, 601 F. 2d 382, 395 (9th Cir. 1979).  It is also established that "the defendant's right to attack the witness's general credibility enjoys less protection than his right to develop the witness's bias." *Reiger v. Christensen*, 789 F. 2d 1425, 1433 (9th Cir.1986); *Evans v. Lewis*, 855 F. 2d 631, 634 (9th Cir. 1988).  Based upon the extensive cross-examination of Government witness Palmer, even without the withheld *Brady* "unreliable" material, the jury had ample information concerning Palmer to determine his credibility and biases, particularly in view of the court's Instruction No. 23.

The evidence against Ms. Koenig was established to the satisfaction of the jury without any inculpatory testimony from David Palmer.  Prior to the April 9, 2002, Palmer transaction, the DEA had never been to 918 E. Empire, and knew nothing about the residents there, but after the April 9th controlled buy involving Mr.Palmer and Mr. Evans, they began an investigation into that residence.   D.E.A. Special Agent Chuck Beaumont testified that after the April 9, 2002,  purchase, he participated in a debriefing of Janie Arambula who stated that she had met Mr. Singh and Ms. Koenig, known to her as "Elvis and "Gabby" approximately four times at 918 E. Empire and that she believed this to be their residence.   She testified that on her second visit there in order to retrieve a cell phone, Defendant Singh provided her with a telephone number that she could contact him with and instructed her to come "straight to the source" the next time.  Ms. Arambula provided this information to Agent Beaumont, who then utilized Ms. Arambula to get back into that residence in order to make a recorded controlled purchase of cocaine base from Singh and Koenig.

On April 18, 2002, Ms. Arambula placed a consensually monitored and recorded telephone call  to Mr. Singh to arrange for the purchase of a half ounce of crack cocaine.

Agent Beaumont testified at trial that he was present during this telephone call and conducted surveillance during the controlled purchase.  The tape of the telephone call and transmitter wire recording of the controlled purchase were admitted and played for the jury.  Mr. Singh agreed to sell a  half ounce of crack cocaine to Ms. Arambula over the telephone and instructed her to come to 918 East Empire.  Ms. Arambula traveled to 918 East Empire in order to carry out the controlled purchase.  She testified that when she arrived Ms. Koenig answered the door and led her to the back bedroom where Mr. Singh (a quadriplegic)  was located.  Ms. Arambula then requested to purchase the half ounce of crack cocaine, and Mr. Singh requested that Ms. Koenig retrieve the crack cocaine and weigh it for Ms. Arambula.  Ms. Koenig weighed "two sevens" and handed the crack over to Ms. Arambula, who then laid the money on Mr. Singh's chest.    This testimony of Ms. Arambula was verified by the transmitter wire recording and the testimony of Agent Beaumont.  Ms. Arambula then left the residence and met with Agent Beaumont in order to turn over the cocaine.

On April 25, 2002, a federal search warrant was executed at 918 E. Empire.  Located inside the residence were three individuals, Defendant James Evans, Olivia Walker, and Defendant Elvis Singh.  During the course of the search, both dominion and control papers belonging to Singh and Ms. Koenig were found, as well as approximately 194.2 grams of cocaine base which were  found directly to the left of Mr. Singh's head in the master bedroom.   Approximately $1,185.00 in cash was found in a fanny pack on the master bed.  The officers also found a firearm underneath the mattress and two more firearms on the floor directly next to Singh.  The authorities located digital scales, several small plastic baggies, and pay-owe sheets consistent with drug ledgers.   Ms. Koenig was not home at the time the search began, but she returned home shortly before it was completed.

Defendant Koenig argues that because the reliability of Janie Arambula was under scrutiny for her prior drug use, the Government's use of David Palmer and their statement as to how they had used him in prior investigations because "it worked" led to her conviction.  However, as noted above, David Palmer gave no testimony about Ms. Koenig

and in fact there was no evidence that Palmer and Koenig had ever met or ever communicated with one another or that Mr. Palmer was ever inside the residence at 918 East Empire where Mr. Singh and Ms. Koenig resided. Palmer's testimony was solely about the controlled buy involving Defendant Evans, Joseph Davis, and himself. Ms. Koenig's conviction was based on the testimony of Janie Arambula, backed up by recording of the controlled buy by Ms. Arambula and the testimony of Agent Beaumont. This evidence as well as the uncontested fact of Ms. Koenig's living arrangement with Mr. Singh had absolutely nothing to due with the testimony of Mr. Palmer.

While this court is concerned by what might be described as a cavalier attitude on the party of the Government concerning the obligation to afford this Defendant due process pursuant to *Brady,* the court is unable to find that a reasonable probability exists that the jury would not have convicted Ms. Koenig had the "unreliable" information concerning Mr. Palmer been furnished the Defendant and its use permitted by the court. Likewise, the court finds that the *Brady* violation did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619,623 (1993). Therefore, Ms. Koenig's Motion to Vacate her Conviction and Dismiss the Indictment against her must be and is **Denied.**

The restraint from deporting Ms. Koenig pending resolution of this matter remains pending any appeal of this Order and request for a continuance of the deportation restriction to the Ninth Circuit Court of Appeals. If an appeal of this court's decision herein is not filed, the court will terminate the deportation restriction.

**IT IS SO ORDERED.** The Clerk is directed to enter this Opinion and Order, and forward copies to counsel.

Dated this 26th day of March, 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE